Filed 11/20/23  P. v. Garcia CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS MANUEL GARCIA,<br><br>    Defendant and Appellant. | F085213<br><br>(Super. Ct. No. BF126194A)<br><br><br>**OPINION** |

### THE COURT\*

APPEAL from an order of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.

Kaiya R. Pirolo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Carly Orozco, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

**INTRODUCTION**

In 2009, Jesus Manuel Garcia (defendant) and Richard Zamarripa were charged with multiple felonies, including willful, deliberate, and premeditated murder (Pen. Code, § 187, subd. (a)). (Undesignated statutory references are to the Penal Code.) Pursuant to a stipulated plea agreement, defendant pled "no contest" to knowingly buying or receiving a stolen vehicle (§ 496d; count 4), voluntary manslaughter (§ 192, subd. (a); count 6), and he admitted a related gang enhancement (§ 186.22, subd. (b)), and that he was a principal in the crime and another person committing the crime was armed with a firearm during the commission of the crime (§ 12022, subd. (a)), assault with force likely to produce great bodily injury (§ 245, subd. (a); count 7) (a non-strike), and felony evading of a police officer (Veh. Code, § 2800.2; count 8).

In 2022, defendant petitioned for relief from his voluntary manslaughter conviction under section 1172.6. At the hearing on the petition, the prosecution argued the information did not allow for murder liability based solely on participation in a crime, whether that was under the natural and probable consequences theory or felony murder. The court denied defendant's petition at the prima facie stage on the grounds "that the Information as it was drafted and filed against the defendant did not allow for the natural and probable consequences doctrine as to this defendant." In this appeal, the parties agree the court erred in denying defendant's petition at the prima facie stage.

We, too, agree. We reverse the court's order and remand the matter for the court to issue an order to show cause and to hold further proceedings consistent with this opinion.

**FACTUAL BACKGROUND**

*Preliminary Hearing Transcript*

Patrol Deputy Patrick Vasquez testified he was dispatched to Community Market on January 6, 2009, around 7:30 p.m. When he arrived, he located a man who had been shot, Javier Lopez Campa, just inside the doorway of the market and there were several

people outside. Vasquez interviewed Christopher G., who had been at the store when the shooting occurred. According to Christopher, Campa was standing near the driver's side of his car. Christopher was "standing near Campa when a dark colored Chevy extended pickup drove northbound on Browning Road and a subject in the passenger side pointed a shotgun towards Campa and fired two shots." The vehicle then sped off. Christopher described the shooter as a Hispanic male, and he heard someone say, "How was that Norte life" right before the shots were fired. He said there were at least two suspects in the truck. Another witness, Victor L., told Vasquez he witnessed the shooting. The shooter fired two shots. Victor stated there were two Hispanic males in black hoodies in the suspect vehicle and one of them shot Campa with a shotgun. Vasquez reviewed surveillance footage from the store in which he saw the suspect vehicle. He believed it looked like a dark-colored Chevy or GMC truck with an extended cab.

Deputy Christian Melero was on patrol that night and saw the suspect vehicle around 7:41 p.m. with two people inside. He identified Zamarripa as the driver and defendant as the passenger. Melero pursued the truck with his emergency lights and siren on; the truck did not stop and was going 80 to 85 mph in a 55 mph zone. The truck ran through several stop signs and Melero saw items being thrown out of the passenger side window. Eventually the truck came to a stop after defendant and Zamarippa jumped out of the moving vehicle and fled. The truck continued to travel until it hit a cement wall at an apartment complex. Law enforcement checked the truck's registration and learned it had been stolen the day before, January 5, 2009. The truck's owner did not recognize either defendant or Zamarippa, but the owner's nephew reported seeing Zamarippa walk around the truck a day or two before it was stolen.

Law enforcement later searched the area where the items were thrown from the truck and recovered two sweatshirts; one of them was wrapped around a shotgun. The shotgun barrel had a very strong odor of gunpowder.

Zamarippa was apprehended by the police; he was hiding in a water heater closet near an upstairs apartment. Defendant was also apprehended and he and Zamarippa were interviewed by police. Zamarippa initially reported he was in Delano all night and he denied ever being in McFarland. However, he later changed his story and admitted "he was in fact driving a vehicle that had been stolen in the Delano area." Zamarippa stated "two subjects picked him up in that vehicle at his residence and … they went to McFarland to look for girls." While they were driving around, "a passenger in the vehicle … started tripping on this guy." He reported "the passenger fired two rounds from a shotgun at some subjects that were standing in the parking lot of the Community Market." Zamarippa stated the person shooting was someone other than defendant. He did not provide the shooter's identity but did provide a description.

A gang expert also testified regarding the gang-related nature of the offenses, predicate offenses, and gang affiliations.

### PROCEDURAL HISTORY

In 2009, defendant and Richard Zamarripa were charged with multiple felonies: conspiracy to commit the crimes of murder, assault with a firearm, and discharge of a firearm from a vehicle (§ 182, subd. (a)(1); count 1); willful, unlawful, deliberate, premeditated and with malice aforethought murder (§ 187, subd. (a); count 2); discharge of a firearm from a motor vehicle (former § 12034, subd. (c); count 3), and knowingly buying or receiving a stolen vehicle (§ 496d; count 4). As to counts 1, 2, 3, and 4 it was alleged the offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang with the intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)) and they were 16 years old or older during the commission of the offense. Defendant and Zamaripppa were also alleged to have personally and intentionally discharged a firearm that proximately caused great bodily injury or death to another person, not an accomplice (§ 12022.53, subd. (d)) during the commission of counts 1, 2, and 3. As to both defendants, it was also alleged the

4.

murder (count 2) was done with deliberation and premeditation (§ 189); it was intentional and perpetrated by means of discharging a firearm from a motor vehicle at another person with the intent to inflict death (§ 190.2, subd. (a)(21); and it was intentional and committed while the defendants were active participants in a criminal street gang (§ 190.2, subd. (a)(22)).  Zamarripa was also charged with unlawful evasion of a pursuing police officer (Veh. Code § 2800.2; count 5) with allegations the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang with the intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)) and he was 16 years old or older during the commission of the offense.

Before defendant changed his plea, the information was orally amended to charge him with voluntary manslaughter (§ 192; subd. (a), count 6) with a section 186.22, subdivision (b) gang enhancement and a section 12022, subdivision (a) "principal armed" allegation, assault with force likely to produce great bodily injury (§ 245, subd. (a)(1); count 7) (a non-strike), and felony evading of a police officer (Veh. Code § 2800.2, count 8).

Thereafter, defendant pled "no contest" to knowingly buying or receiving a stolen vehicle (§ 496d; count 4), voluntary manslaughter (§ 192, subd. (a); count 6), assault with force likely to produce great bodily injury (§ 245, subd. (a); count 7) (a non-strike), and felony evading of a police officer (Veh. Code § 2800.2; count 8) and, in relation to count 6, he admitted a gang enhancement (§ 186.22, subd. (b)) and that he was a principal in the crime and that another person committing the crime was armed with a firearm during the commission of the crime (§ 12022, subd. (a)) in exchange for a sentence of 23 years 4 months.  The parties stipulated there was a factual basis for the plea.  The court sentenced defendant to the upper term of 11 years on count 6, plus 10 years for the section 186.22, subdivision (b) gang enhancement, an additional year for the section 12022, subdivision (a) enhancement, and two, consecutive eight-month terms on counts 4 and 8 (one third of

the midterm).  The court also sentenced defendant to the upper term of four years on count 7, stayed pursuant to section 654.

In 2022, defendant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95).[1]  He averred a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory, murder under the natural and probable consequences doctrine, or other theory under which malice was imputed based solely on participation in the crime; at trial, he was convicted of murder, attempted murder, or manslaughter or accepted a plea offer in lieu of a trial at which he could have been convicted of murder or attempted murder; and he could not now be convicted of murder or attempted murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Sen. Bill No. 1437 (2017–2018 Reg. Sess.)). He also requested the appointment of counsel.

The court appointed defendant counsel and set a hearing.  In their response to the petition, the People argued "because the felony information would not have allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences theory, or another theory where malice is imputed to the defendant based solely on his participation in a crime, [defendant] is not eligible for relief as a matter of law.

On November 2, 2022, the trial court held a hearing on defendant's petition. Defense counsel argued defendant and Zamarripa pled to voluntary manslaughter and did not admit to personally using or possessing a deadly weapon.  Rather, defendant pled to an allegation that "a principal[] was armed during the course of the crime."  She further asserted, the admissible preliminary hearing evidence—the observations of the police

---

[1]Effective June 30, 2022, the Legislature renumbered then effective section 1170.95 to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  There were no substantive changes to the statute at that time, although prior changes had been implemented effective January 1, 2022.  There is no dispute in this case that turns on any of these changes.  For purposes of clarity, we refer to the statute as section 1172.6.

officers that testified—did not establish the identity of who was driving the vehicle or fired the shots.

The prosecutor asserted the court could not typically consider the preliminary hearing transcript during the prima facie stage unless someone pleads guilty or no contest and stipulates that the preliminary hearing transcript forms the factual basis for the plea. He argued the transcript gives the court "a sense of what the theory of liability was." The court asked if it was the People's position the information was not filed under the natural and probable consequences doctrine. The prosecutor responded, the allegations in the information did "not allow for murder liability based solely on participation in a crime, whether that's under natural and probable consequences or felony murder." In support, he relied upon the allegations in the charging document that defendant committed the murder with premeditation and deliberation and the enhancement allegation that it was by means of intentional discharge of a firearm from a motor vehicle.

The court then asked if it was the People's position that "what the defendant pled to by extension of the original filing cannot be under the natural and probable cause [*sic*] doctrine." The prosecutor responded that what defendant "was charged with didn't allow for prosecution under one of those theories." Put differently, "the way it was initially charged … prohibits resentencing because of how it was charged." The prosecutor further affirmed it was the People's position the information in this case was "pled specifically" and did not "fit into that rubric."

Defense counsel disagreed the charging document was sufficient to disqualify defendant from relief. Rather, the court should consider what defendant pled to and what was established in the case by the preliminary hearing transcript. She noted defendant did not plead to anything dealing with personal use of a deadly weapon, nor was he found guilty of first degree murder with premeditation and deliberation. She noted, even if that was the charge, it was not what he pled to.

7.

The court held defendant was ineligible for relief under section 1172.6, subdivision (a) because "the Information as it was drafted and filed against the defendant did not allow for the natural and probable consequences doctrine as to this defendant." The court found it "telling" that, though defendant pled to felony evasion of a police officer, originally only Zamarripa was charged with that count. Accordingly, the court denied the petition.

The court reasoned,

> "In review of the statute, particularly 1172.6(a)(1) … the language is such that all of the following conditions have to apply in order that they would be considered for the resentencing. And I think it is telling that in Section 1 it says, quoting, 'a Complaint, Information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime or attempted murder under the natural and probable consequences doctrine.' [¶] In this instance, as I review the original Information, not what the defendant pled to, because Prong One has to be satisfied in order to get to Prong Two. But what I see in the original Information … is the … conspiracy to commit murder with enhancements. [¶] Count 2 was the actual charge of murder with enhancements. [¶] Count 3— and what I'm citing as to this defendant, was the charge of a 12034(c), which was the discharge of a firearm. I don't know if that's still considered that code section, but that's what it was at the time, with enhancements. And … I don't disagree that theories are charged as to two separate individuals at the time. [¶] Count 4, as to this defendant and the associated defendant, was … possession … of stolen property with enhancements. [¶] Count 5, and I think this one's very telling. Although I know the defendant did plead to an amended count of it is the 2800.2 as to Zamperini [*sic*] only, not charging this defendant with that."

## DISCUSSION

### I. Senate Bill No. 1437 and Senate Bill No. 775

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019. Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences

8.

doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amends section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2–3.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime.*" (§ 188, subd. (a)(3), italics added.) The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Senate Bill 1437 amended section 189, in part, by adding subdivision (e) which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1172.6 (former § 1170.95), which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, § 4.) Initially, this section permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (Stats. 2018, ch. 1015, § 4, subd. (a).) In Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, the Legislature amended the language of section 1172.6 to expand the scope of the petitioning procedure to defendants convicted of attempted murder or manslaughter under a now prohibited theory. The legislation also clarified some of the procedural requirements in the statute.

Pursuant to amended section 1172.6, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1172.6, subd. (b)(3).) "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) If the petitioner has made such a showing that the petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

The trial court may look at the record of conviction to determine whether a petitioner has made a prima facie case for section 1172.6 relief, but the prima facie inquiry under subdivision (c) is limited. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Ibid.*) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.) "'[A] court should not reject the petitioner's factual

10.

allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Id.* at p. 971.) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" [Citations.]" (*Ibid.*)

## II. Analysis

Defendant contends, and the People agree, the court erred by denying his petition for resentencing at the prima facie stage. The parties agree the record before the court did not establish defendant was ineligible for relief as a matter of law. We agree.

Defendant made a prima facie showing for relief under section 1172.6. He alleged in his petition that a charging document was filed against him allowing the prosecution to proceed under a theory of felony murder, murder based on the natural and probable consequences doctrine, or other theory under which malice was imputed to a person based solely on that person's participation in a crime; he accepted a plea offer in lieu of a trial at which he could have been convicted of murder; and that he could not presently be convicted of murder because of the changes to sections 188 and 189. (See § 1172.6, subd. (a)(1)–(3).) The court was required to accept those allegations as true unless the facts in the record of conviction refuted them. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) And here, the trial court had a limited record before it, none of which conclusively established defendant was ineligible for relief.

The superior court relied on the manner in which defendant was charged—the initial failure to charge him with evading law enforcement—to conclude he was ineligible for relief as a matter of law. But, contrary to the court's conclusion and the People's argument below, the manner in which the murder was charged did not limit the prosecution to any particular theory. Rather, it generically charged defendant with murder. (See *People v. Flores* (2022) 76 Cal.App.5th 974, 987 ["the first amended

11.

information charged petitioner generically with murder, and did not specify or exclude any particular theory of murder"]; see also *People v. Rivera* (2021) 62 Cal.App.5th 217, 233 ["The generic manner in which murder was charged here did not limit the People to prosecuting Rivera on any particular theories"].)  And, even assuming without deciding the court could properly consider the preliminary hearing testimony at this stage, it did not establish as a matter of law that defendant could not have been prosecuted under a now invalid theory.  (See generally *Flores*, at p. 989 ["Courts of Appeal are split on the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing under section [1172.6]"].)  Notably, Zamarippa provided the only identification of the shooter and stated it was a third party; he denied it was him or defendant.  And the prosecutor conceded, "[W]e don't know who particularly fired the gun from the truck."

Accordingly, the order denying the petition must be reversed and the matter remanded with directions for the trial court to issue an order to show cause and, to the extent necessary, to conduct an evidentiary hearing under subdivision (d) of section 1172.6.  We express no opinion on the ultimate resolution of the petition.

## DISPOSITION

The order denying defendant's petition for resentencing is reversed and the matter is remanded with directions for the trial court to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing pursuant to section 1172.6, subdivision (d).

12.